# Olyphant Borough, Appellant, *v.* Delaware & Hudson Company.

*Railroads—Crossing streets—Boroughs—Right of way—Laying additional tracks.*

1. Where a railroad company incorporated in another state was given the power by the Act of March 24, 1870, P. L. 554, to condemn or purchase lands not exceeding sixty feet in width, and to construct and establish a railroad with one or more tracks, and the company acquires land of the width of sixty feet and lays a single track thereon and across township roads in an unincorporated town or village, the subsequent incorporation of the town and the change of the roads into borough streets, do not give the borough a standing to enjoin the railroad company from laying additional tracks within its right of way and across the streets. In such a case the power of the company to construct a railroad was not exhausted when it laid the first track.

*Constitutional law—Title of act—Railroads.*

2. The title of an act of assembly which shows that the purpose of the act was to authorize a company to build a railroad, gives sufficient notice of a provision in the body of the act giving the company the right of eminent domain.

Argued Feb. 22, 1909. Appeal, No. 282, Jan. T., 1908, by plaintiff, from decree of C. P. Lackawanna Co., Nov. T., 1906, No. 1, dissolving preliminary injunction in case of Olyphant Borough v. Delaware & Hudson Company. Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before NEWCOMB, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dissolving preliminary injunction.

*I. H. Burns*, with him *P. L. Walsh*, borough solicitor, and *A. A. Vosburg*, for appellant.—The complainant is incorporated by the state of New York. It is not a corporation of Pennsylvania. It acts under a license from Pennsylvania to do certain acts: Goodlett v. Railroad Co., 122 U. S. 391;

Wilkinson v. L. W. R. Co., 22 Fed. Repr. 353; State v. Railroad Co., 30 N. J. L. 368.

The defendant company being, then, a foreign corporation before it could lawfully do business in Pennsylvania, it was necessary for it to receive the right so to do from its parent state of New York. This right it has not received either by its charter or any legislative acts subsequent to it: St. Louis & San Francisco Ry. Co. v. James, 161 U. S. 545; Water Co. v. Street Ry. Co., 13 Pa. Dist. Rep. 365.

The act of 1870 is unconstitutional: Dorsey's App., 72 Pa. 192; Union Pass. Ry. Co.'s App., 81* Pa. 91; West End Pass. Ry. Co. v. City Pass. Ry. Co., 10 Phila. 75.

We think the court erred in holding that the construction of the single track from Olyphant to Carbondale did not exhaust the company's right to another taking: Dryden v. Railway Company, 208 Pa. 317.

*James H. Torrey,* with him *Joseph O'Brien,* for appellee.— The defendant was not required to secure the consent of the borough authorities before laying additional tracks across the streets: Northern Coal & Iron Co. v. Wilkes-Barre, 218 Pa. 269.

The defendant company had a clear right to build the additional tracks: Philadelphia, W. & B. R. R. Co. v. Williams, 54 Pa. 103; Zahn v. Railway Co., 184 Pa. 66; Pittsburg v. Epping-Carpenter Co., 194 Pa. 318; Com. v. Railroad Co., 27 Pa. 339; Cleveland & Pittsburg R. R. v. Speer, 56 Pa. 325; Perry County R. R. Co. v. Railroad Co., 150 Pa. 193.

The principle is too familiar to require the citation of authorities, that though an act of assembly be defective by reason of the omission of some of its provisions from its title, the act will be operative except as to the omitted provisions: Dewhurst v. Allegheny City, 95 Pa. 437; Philadelphia v. Ridge Ave. Ry. Co., 142 Pa. 484.

Even if, however, the question were properly raised it is perfectly manifest that the right of eminent domain is germane to the purposes of the act as expressed in its title: State Line, etc., R. R. Co.'s App., 77 Pa. 429.

OPINION BY MR. JUSTICE BROWN, June 22, 1909:

The complaint of the borough of Olyphant is that the court below refused to enjoin the appellee from laying additional railroad tracks across Dunmore, Moosic and Bell streets—public highways within the municipal limits. By the Act of March 24, 1870, P. L. 554, the appellee, whose corporate title at that time was "The president, managers and company of the Delaware and Hudson Canal Company," was authorized to locate and construct a railroad from a point in the town of Olyphant, in Luzerne county, to the city of Carbondale, in the same county. The second section of the act conferred upon the company all the power, authority and privileges given in the tenth section of the railroad Act of February 19, 1849, P. L. 79, and all damages in the location and construction of its railroad for right of way and land or materials taken were to be secured and assessed in the manner provided by the act of 1849 and the several supplements thereto. At that time the borough of Olyphant was not incorporated. As a town or village it formed a part of the township of Blakely in Luzerne county. In 1870 the appellee began the construction of a single track between the terminal points named in the act, and the same was completed in 1871. It traversed the section in controversy in this case. What are now Moosic and Dunmore streets were, in 1871, public roads in Blakely township. By a decree of the court of quarter sessions of Luzerne county the town of Olyphant was incorporated as the borough of Olyphant on December 18, 1876. In 1886 the appellee built an additional track between the same terminal points. This track was laid across the streets in question at grade without objection. In 1906, in pursuance of action by its board of directors, the appellee proceeded to lay two additional tracks for the purpose of making its road one of four tracks, with necessary switches and sidings, from Carbondale south to and through the borough of Olyphant. The third track had been laid across Dunmore street, and the third, fourth and part of a fifth for switching purposes had been laid across Moosic street when the present bill was filed. Before laying these

additional tracks across the said streets the company, without conceding anything as to its legal rights in the premises, made an unsuccessful effort to secure the consent of the borough to do so, but the municipal authorities rejected its proposals and refused consent to the further occupation of the streets for grade crossings. The court found as a fact that the action of the borough, under all the circumstances, was somewhat unreasonable. At the crossings and on each side of them the appellee is in apparent possession, under claim of title, of a strip of land of a width nowhere less than sixty feet, and the proposed tracks will not fall outside of the line defining that width.

If the act of 1870 conferred upon the appellee the power to locate and construct its road from a point in the village of Olyphant to Carbondale, there went with that power the right to cross the township roads, and when such roads subsequently became municipal streets upon the incorporation of the borough of Olyphant, the right of the appellee to continue to cross them remained unimpaired: and if the appellee was empowered to locate and construct its road through and across territory which afterwards became the site of the borough of Olyphant, no streets laid out and opened by that borough can interfere with the rights which were conferred upon the appellee by the act of 1870, for the site of the borough was selected with all those rights resting upon it, to exercise which municipal consent is not now needed: Northern Coal and Iron Co. v. Wilkes-Barre, 218 Pa. 269.

The right of the appellee with which the appellant would interfere was clearly conferred by the act of 1870. It is authorized to locate and construct a railroad between designated termini, and that it might construct the said road it was expressly given the power of eminent domain as conferred upon railroad companies by sec. 10 of the act of 1849. Under a claim of title, acquired either by purchase or condemnation, it is in possession of a strip of land nowhere of a less width than sixty feet. Though it was a foreign corporation at the time the act of 1870 was passed, the power conferred upon it by our legislature is to be judged by the same

rules as if it had been actually incorporated here, and, so far as its road was originally constructed or is now being improved in this state under powers granted by our legislature, it is a quasi Pennsylvania corporation, whose rights and powers are to receive from the courts no less protection than is accorded to our own corporations: New York and Erie R. R. Co. v. Young, 33 Pa. 175; Com. v. N. Y., L. E. & W. R. R. Co., 129 Pa. 463.

It is urged that the act of 1870 is unconstitutional in that its title fails to give notice of the power of eminent domain conferred upon the appellee or of its right to connect with the Jefferson railroad at Carbondale. Its right to connect with the Jefferson road is not involved in this proceeding, and the same is true of its power of eminent domain, for, as stated, the court has found that it is in possession under a claim of title of all the land it needs for its additional tracks; but if the sufficiency of the title in giving notice that the power of eminent domain is conferred by the act is to be regarded as a question before us, we have no doubt that it meets the constitutional requirement. The purpose of the act, as disclosed in its title, was to authorize the appellee to construct a railroad. Such a road cannot be constructed without acquiring land for its construction, and it is a matter of common knowledge that, as a rule, railroads are constructed over land acquired under the power of eminent domain, without which they could not be constructed. This power was germane to the construction of the appellee's road, and notice of authority to construct it ought reasonably to have led to an inquiry into the body of the bill.

Though the appellee has acquired a right of way sixty feet in width between the terminal points named in the act of 1870, counsel for appellant contend that it cannot now use this right in laying additional tracks, because it exhausted its power to construct a railroad when it laid the first track. Section 10 of the act of 1849 is a quasi part of the charter of the appellee and must be so regarded in passing upon its powers involved in this proceeding. By that section it was empowered "to lay down, erect, construct and establish a

railroad, with one or more tracks," and that it might construct such a railroad it was empowered to acquire, either by condemnation proceedings or purchase, lands not exceeding sixty feet in width. There was no requirement that more than one track should be built by it when it began the exercise of the power conferred upon it, and at that time there was no reason why it should have built more; but it acquired the land needed for more, to be used whenever more might be needed. There was no limitation placed upon its power to construct a railroad of one or more tracks which compelled it to exercise its whole authority in the beginning, when the demands of business may have been few, and it would be a most unreasonable construction of its authority to require that it ought, in 1870, to have made provision for all the unknown wants of the future. When increased facilities are required by the public, growing out of increase of trade and business and changes taking place, the power conferred upon it can again be called into exercise: Philadelphia, Wilmington & Baltimore R. R. Co. v. Williams, 54 Pa. 103. There is nothing in the twenty assignments of error which would justify any disturbance of the decree made, and it is, therefore, affirmed at appellant's costs.