## ISABELLA ELLIOTT v. OIL CITY.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF VENANGO COUNTY.

Argued October 9, 1889—Decided October 28, 1889.

(a) In an action against a city to recover damages for injuries to plaintiff's lot, there was evidence that the lot lay in the course of a natural flow of water across a turnpike, and that the city by the construction of a culvert under the turnpike, and other acts, had turned a largely increased flow of water upon plaintiff's property.

1. In such case, it was not error to instruct the jury that if by the action of the city in the construction of the culvert under the turnpike, etc., a larger quantity of water than the natural flow of surface drainage was discharged upon plaintiff's lot, occasioning injury without fault on the plaintiff's part, the plaintiff was entitled to recover.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

·No. 161 October Term 1889, Sup. Ct.; court below, No. 18 January Term 1885, C. P.

On December 16, 1884, Isabella Elliott brought case against the city of Oil City to recover damages for injuries alleged to

have been done to her property by the negligent acts of the defendant. Issue.

At the trial on May 13, 1869, the plaintiff introduced evidence to show that she owned a lot about forty-five feet wide and one hundred and fifty feet long, situated in a depression of the ground, forming a natural water course, some of the witnesses calling it a ravine. The Salem turnpike ran through the front portion of her lot, cutting it into two portions. On the lower portion of the lot was situated a house, and back of the house a garden. The turnpike running through the lot had under it, just above the house, a small sewer to carry off the waste water. In June, 1883, a flood occurred which caused considerable damage to the plaintiff's property, but it was conceded that for this the city was not liable. In the fall of 1883, however, the city went upon the ground and constructed a larger sewer under the turnpike, in place of the small sewer. The plaintiff claimed that by reason of the increased flow of water through the larger sewer her property was injured.

At the close of the testimony, the court, TAYLOR, P. J., charged the jury in part as follows:

The plaintiff claims here for alleged injury occasioned by the construction of a sewer by the city authorities, sometime in the fall of 1883, after the flood—what was termed by the witnesses, the big flood, which washed down the roads and everywhere left things in bad condition.

That there was an injury, at that time, to the plaintiff's lot, and that it was a pretty serious one, is evident, for shortly thereafter the plaintiff complained to the city authorities, who went upon the ground, and, after that, the larger sewer was put in. There had been one, a foot square perhaps, and after that a larger one, some two feet square, was put in. From that time on, the plaintiff claims that she is entitled to recover damages for injury that she sustained. What damages has she sustained since that big flood of 1883?

The plaintiff's theory is that defendant constructed a little obstruction just above in the ditch of the turnpike, so that it turned all the water that came down the hill across her lot; that more water was thrown across her lot by reason of some sewers that were put in above or by reason of some streets

Charge of Court below.

being excavated, and that more water was caused to flow through this culvert than the natural watershed. They claim that this damming up of the stream, and the putting in of the culvert was negligently done by the city; that they ought not to have put in such a culvert there without providing some other means to take the water off from this property; that a larger quantity of water is caused to flow there, and that each year she has been sustaining some damages down to the present time, and that every heavy rain that comes injures her property; that, by reason of this increase of water there, added to the natural flow, her house, garden and well have been injured to quite an extent and some fruit trees washed away. That is the plaintiff's theory.

The defendant's theory, and what they ask you to find, is, that the city had nothing to do with this, until after the great flood of June, 1883, and that at least three fourths of the damage that ever was done to the property was done by that flood, which was prior to their having anything to do with it. They say, too, that the cutting away of the timber and the making of streets had made the effect of storms more serious and increased the natural flow of water; that when they put this sewer in, the first you have any knowledge they had anything to do with it, the water in every heavy rain would overflow and go over the lot below, and for that reason they put the larger sewer there; that no more water has passed through there than the natural watershed would throw off, or, if there be more water, the increase has been caused by the clearing up of the country, etc.; that, in addition thereto, a part of the water that would naturally flow this way into the ravine has been taken off by a sewer put in at Orange street, and thereby the flow of water has really been lessened across this lot; that it is less now than it was before the sewer was put there by the city. They ask you to find, too, that the plaintiff did nothing; that she was guilty of contributory negligence by reason of sitting idly by and allowing her property to be wasted away each year, and for that reason she cannot recover for anything which has occurred since the flood of June, 1883. That is the defendant's theory.

The rule of law covering this case is very brief. It is simply this: That every person is bound to bear the burden of

water that would naturally flow upon his land and no other. A person who builds a house in a ravine is bound to sustain any injuries which may occur from the natural flow of water into that ravine, and he is not bound for anything further than that. If, by any means, a larger quantity of water is thrown upon him by the defendant's act, than the natural flow of the watershed would contain, and injury results thereby, without fault of plaintiffs, then they may recover compensation for whatever damage they have sustained by reason of this increase of the water flow, taking it together with the ordinary water flow.

This claim is founded upon negligence. That is, the plaintiff claims that the city negligently constructed a sewer there, or negligently put across a little barrier, thereby causing more water to be thrown upon her lot than the natural watershed.

  *   *   *   *   *   *   *   *

If you find that, by reason of the construction of the culvert, or by any means, the defendant caused a larger flow of water than what would naturally escape from the natural watershed, and the plaintiff was injured thereby, without any negligence, or omission, or concurrent contributory negligence to such injury on the part of the plaintiff, she is entitled to recover. If, upon the other hand, you find that since the construction of the sewer complained of, no more water is turned therein than the natural flow of the watershed drained, or, if you should find that there is more water flowing there, yet if the plaintiff is guilty of contributory negligence, in the slightest degree, which contributed to the injury to her property, your verdict should be for the defendant.

If you find for the plaintiff, you will assess the damages at what would compensate her for her loss. You have heard the testimony of the different witnesses; some of them put it at almost nothing and some put it high, but you will arrive at what you think is a fair compensation for any loss which she has sustained by reason of the injury by the defendant, if any injury there be. And to find that, you will take into consideration the value of the property before and afterwards, the loss of trees, if any, and all those things; [to which you may add interest from the time of the commission of the injury.] [7]

  *   *   *   *   *   *   *   *

The plaintiff asks us to instruct you:

Charge of Court below.

1. If the jury find from the evidence that the surface water falling upon upper Division street, and land adjacent thereto, ran naturally to the Allegheny river, without going over the land of the plaintiff, was by the defendant by means of obstructions, drains and culverts carried to and discharged upon the land of the plaintiff, thereby causing damage to the plaintiff's land, the defendant is liable for the damage so occasioned.

Answer: Affirmed, unless the jury further find that the plaintiff by her own acts or omissions contributed to the injury.

2. If the jury find from the evidence that the old Salem turnpike, within the limits of said city of Oil City, runs along and through land the surface drainage of which is naturally down depressions and ravines leading from said turnpike to the Allegheny river, and that instead of said drainage being conducted or permitted to flow therein, is by the defendant accumulated and carried by artificial drains on the side of the said turnpike, and by artificial embankments held therein, and by means of a large culvert, built by defendant's direction, emptied upon the plaintiff's land, and damage is thereby done to said land, the defendant is liable to the plaintiff for the damage so done.

Answer: Affirmed, with the same qualification as the preceding point.

3. That if the jury find from the evidence that the defendant, by means of a culvert constructed by it or its officers, discharged upon the plaintiff's land more water than flowed over and upon said land naturally, and that such excess of water caused damage to the plaintiff's land, the plaintiff is entitled to recover in this action for the damage so suffered.

Answer: Affirmed, with the same qualification as the first point.

Defendant asks us to instruct you [inter alia]:

1. If the jury find from the evidence that, prior to the time the plaintiff purchased the real estate claimed to be injured, a gutter or passage for the water was made over the pike, conveying the water into the gully down the hill on the lot in question, and that being the natural course for it to take, the plaintiff purchased the lot subject to the right of the proper authorities to keep the gutters open, and to cover the one over the pike, to assist the public to travel over it.

Answer: Affirmed.

5. If the jury find from the evidence that the freshet in 1883 occurred before the culvert was put in, which is complained of in plaintiff's declaration, the plaintiff is not entitled to recover for the damages occasioned at that time; and, there being no evidence separating the damages occasioned before said culvert was put in, from the continuous damages occasioned since, the jury have nothing before them upon which to base a verdict for the damages accruing after said culvert was put in.

Answer: We submit this question to the jury, who should not find facts without evidence. If there be any, bearing upon the question, they may so find and apply it.[1]

5½. The continued neglect of the plaintiff to do anything to prevent further damages to her premises after the freshet of 1883, renders her guilty of such contributory negligence as to prevent her from recovering in this case, provided the damage complained of in 1883 was occasioned before the culvert was put in.

Answer: This is purely a question for the jury. If they find that the plaintiff was guilty of contributory negligence, which contributed in any degree to occasion the injury complained of, she cannot recover.[2]

9. The house and lot being located in a ravine, in the course of the natural flow of the water from a highway which was at the time of the injury in the possession of a turnpike company, over which the city had not assumed control, the defendant is not liable for the resulting damages.

Answer: As an abstract proposition of law this point might be affirmed; but with reference to the facts in this case, if the jury should find that the city street commissioners under the authority of, or by the direction or permission of the city authorities, constructed a culvert under the turnpike, which conveyed a larger quantity of water than the natural drainage or surface water, and discharged the same upon the plaintiff's land, thereby occasioning injury, without fault upon her part, the plaintiff should recover for such injury.[3]

11. If the plaintiff's theory be correct, the water complained of either came down the natural depression, in the course of which the plaintiff's lot is admitted to be located, or was diverted into this course by the laying out, or grading, or im-

provement of the streets. For that portion of the water coming down the natural water course, the plaintiff has no right to recover; and for that portion which was diverted by reason of the grading and improvement of the streets, there is a complete statutory remedy under the act May 1, 1876, and for that plaintiff cannot recover in this action.

Answer: This point as made answered in the negative.[4]

12. Under the law and the evidence, the plaintiff is not entitled to recover.

Answer: We submit this question to the jury.[5]

The jury returned a verdict in favor of the plaintiff for $134.50. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal, assigning for error:

1–5. The answers to defendant's points. [1 to 5]

7. The portion of the charge as to interest. [ ] [7]

*Mr. Isaac Ash* (with him *Mr. Martin Carey*), for the appellant.

Counsel cited: Carr v. Northern Liberties, 35 Pa. 329; Scranton City's App., 121 Pa. 107; Allentown v. Kramer, 73 Pa. 406; act of May 1, 1876, P. L. 86; Barnes v. Sowden, 119 Pa. 60; Delaware etc. R. Co. v. Cadow, 120 Pa. 572. The seventh specification was conditionally withdrawn.

*Mr. J. W. Lee* and *Mr. F. L. Kahle*, for the appellee were not heard.

The brief filed cited: Huddleston v. West Bellevue Bor., 111 Pa. 110; Bare v. Hoffman, 79 Pa. 71.

PER CURIAM:

For the natural flow of water over plaintiff's lot the defendant city would not be responsible. But the plaintiff contended, and the jury, under proper instructions, have found, that by the action of the city the flow of the water over her land had been largely increased, and that the injury complained of was the result of such increased flow. An examination of the respective specifications discloses no substantial error. We were not asked to reverse by reason of the instruction referred to in

the seventh specification. It was technically inaccurate, as was said in Railroad Co. v. Ziemer, 124 Pa. at page 571, but it did the defendant no harm.

Judgment affirmed.

---

129 577
175 499

