## Elizabeth L. Gift *v.* City of Reading, Appellant.

*Municipal law—Negligence—Construction of sewers—Ministerial duties.*

It must be conceded that the power of a municipal corporation to construct sewers is discretionary and in its nature judicial, and that no civil liabilities are incurred for failure to perform; nor for errors of judgment in its exercise, such as selecting plans, locations, etc., although the sewers constructed pursuant thereto prove inadequate. But the work of construction in accordance with adopted plans is purely ministerial; it must, therefore, like all ministerial duties, be performed in a skillful and careful manner. A municipality is liable for injuries caused by negligent performance.

*Municipal law—Liability in regulating flow of surface water.*

In regulating the flow of surface water on the streets, municipalities have no right to cast it upon adjacent property, and that water thus diverted must first pass over the intervening lands of others, will not affect the question of liability.

*Municipal law—Injuries from construction of sewers—Measure of damages.*

Where property is injured by negligent construction of a sewer, by reason of the diversion of water caused thereby, the measure of compensation would be the cost of repairing the damages and thus restoring the property to its former condition, unless such cost would equal or exceed the value of the building, in which case the value of the building would be the measure of the plaintiff's damages.

Argued Nov. 13, 1896.    Appeal, No. 135, Nov. T., 1896, by defendant, from judgment of C. P., Berks Co., Nov. T., 1894, No. 44, on verdict for plaintiff.    Before RICE, P. J., WILLARD,

360    GIFT *v.* READING, Appellant.

Statement of Facts—Assignment of Errors. [3 Pa. Superior Ct.

WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.  Reversed.

Trespass for injuries arising from negligent construction of a sewer.  Before ERMENTROUT, P. J.

The facts sufficiently appear in the opinion of the Superior Court.

Verdict for plaintiff for $775.  Defendant appealed.

*Errors assigned*, inter alia, were:

(4) In charging the jury as follows:

" There does not seem to be any dispute that there was a natural water course draining that section.  It is also admitted that the city built a sewer across that water course.  The plaintiff alleges that this sewer was built directly across the water course and interfered, obstructed, and diverted the water from its accustomed channel, and causing it to spread over the property of the plaintiff, injuring both the real estate and the contents of the house.  Now, if the city did build a sewer over the natural water course in such a way as to actually interfere, obstruct, and divert the water, so that instead of going down and off in its accustomed channel, it was clogged up and then drained upon this property, causing a damage, then the city did a wrong to the property owner for which the city should be held liable.

" The city, however, says that it did not build the sewer in that way.  It says it planted this sewer underneath the bed of the water course in such a way that the water course was not diverted.  If you believe that the building of the sewer did not obstruct the water course, then there can be no recovery."

(5) In charging the jury as follows:

"If you should find however, under the facts of the case, that this sewer was actually so built as to divert the course of the water, and cause it to accumulate, and then to be drained upon this property, then, as I said before, the injury would be done, and there can be a recovery, unless there was some act on the part of the plaintiff which contributed to bring about this result. If that act was by damming up the drain on her property, then there would be a contribution.  She denies it, and I know of no witness in this case who actually says she did anything to this ditch.  The facts are, however, for the jury."

(6) In rejecting the following evidence :

S. S. Hoff sworn :

" Q. So that if property owners had not filled up the ditch at the Cullen corner, the water would still have gone over the surface of Spring street into this ditch and down over to Windsor street, would it not ? "

Mr. Schroeder : Objected to as not proper cross-examination.

By the Court : Objection sustained. Exception for defendant.

(7) The court erred in rejecting the following testimony :

S. S. Hoff sworn :

By Mr. Stevens : " Q. So that the water coming down Spring street would, notwithstanding the fact that you have raised Spring street to this grade, have entirely been discharged through this water course ? "

Mr. Schroeder : Objected to as not proper cross-examination.

By the Court : Objection sustained. Exception for defendant.

(10) In admitting testimony as follows : Alfred W. Gift, being on the stand, plaintiff made the following offer :

Mr. Schroeder : Plaintiff proposes to show that they have a small baby, and that this child was one year old at the time of this overflow, and that the mother was obliged to get out of the house during some of these floods, and that they were interfered with in the comfortable enjoyment and occupancy of their building by reason of these floods.

Mr. Stevens : Objected to, because the narr does not allege any injury of that kind.

By the Court : We will allow the question. Exception for defendant.

(11, 12, 13, 14, 17, 18, 19) In admitting plaintiff's testimony, under objection, to prove the market value of the premises before the flooding and after the flooding ; (16) admission of evidence of Dr. Brackbill as to the sanitary condition of the premises ; (20) rejection of evidence offered for the purpose of showing the condition of the house after the flooding and the actual injury done, and putting an estimate in dollars and cents on the injury done to the house ; (21) in rejecting evidence as to the condition of the furniture.

*William Kerper Stevens,* city solicitor, for appellant.—The facts in this case bring it under the decision of Fair v. Phila., 88 Pa. 309. The case presented by the plaintiff is that of Collins v. Phila., 93 Pa. 272.

The true rule as to the measure of damages is stated in Lentz v. Carnegie, 145 Pa. 612.

The same question was considered in the Supreme Court in Eshleman v. Martic Township, 152 Pa. 68.

*George F. Hagenman* and *D. E. Schroeder,* for appellee.— Appellee's damages at the trial below was for injury and destruction to her real estate and personal property. The evidence related to both, and the jury returned their verdict in one gross sum. How can the sum be ascertained and divided, a portion for the realty and a portion for the personalty? Phila. v. Linnard, 97 Pa. 242.

The true measure of damages is the difference between the market value of the land as affected by the taking of it for public use and such value as unaffected thereby: Boham v. Avoca Borough, 154 Pa. 404.

The evidence tended to prove the facts on which the plaintiff's case was predicated, and by its affirmance plaintiff's case was fairly presented to the jury: Frederick v. Lansdale Borough, 156 Pa. 613.

OPINION BY SMITH, J., January 18, 1897:

The plaintiff, in her declaration, avers that she is the owner of a two story brick dwelling house situate on the north side of Windsor street in the city of Reading; that prior to the year 1889 a natural water course drained all surface waters without overflowing her land; and that in 1889 the city authorities built a sewer, which was inadequate to drain the watershed, and at the same time filled up the natural water course, whereby the water overflowed her premises several times, damaged the dwelling and its contents, and diminished the market value of the property. This suit was brought to recover for the injuries thus suffered.

On the trial, the plaintiff's right to recover was restricted, practically, to injuries caused by the obstruction of the natural water course and the consequent diversion of the water to and

upon her premises, and the jury were told that no recovery could be had for any injury caused by the insufficient size or capacity of the new sewer. The obstructions complained of were twofold: (1) the new sewer, which it is alleged was so placed as to obstruct the passage of the water where it had been accustomed to flow, and (2) the filling up of the natural water course at a point on Spring street north of the plaintiff's land, which, it is alleged, caused the water to overflow her lot. It was also contended, on the argument, that the evidence showed that a plan known as Bassett's System had been adopted by councils for the sewerage of the whole city, and that if it had been carried out in a methodical manner, with due regard to the changes and the passage of the water as contemplated by the new plan, other parts of the system would have been first built, and the greater part of the water diverted to the plaintiff's lot would have been carried off ·in other directions, as intended, through the enlarged system; and that the defendant was therefore negligent in not constructing. the sewer so as to avoid overtaxing the part built near the plaintiff's land. But this view was not declared upon nor submitted to the jury for their consideration, and there is nothing in the record to warrant the assumption that it entered into the basis of their finding. It was admitted that neither the whole system nor the part which it was alleged would relieve the Nicolls street sewer had been built at the time of the injuries complained of, nor at the time of the trial in the court below. On the question of damages, the learned trial judge told the jury that compensation such as would make the plaintiff whole was the correct rule, and that in estimating the damages to the building they were to consider and allow for the difference in its market value before the injury, and after, as affected by the injury; and referred them to the opinions of the witnesses, on this point.

The evidence, with the map of the district, shows that the sewer complained of crosses the water way at Spring street at nearly right angles, and three feet below its bed, but does not follow the bed of the water course or occupy any part of it between Spring and Oley streets. So that, under the facts it is not the case of the conversion of an old water course into an artificial sewer, as in Collins v. Philadelphia, 93 Pa. 272; nor was the injury necessarily caused by the inadequacy of the

sewer, as in Fair v. Philadelphia, 88 Pa. 309. It may be that the city authorities intended the new sewer as a substitute for the water way, and that the water should be diverted to it from the latter; but that does not bring the case within the facts in Fair v. Philadelphia. In that case, an existing sewer was over-taxed through an extension of the system, thereby causing a larger volume of water to flow through it. None of the water which accumulated on the premises of the plaintiff in that case was thrown there by reason of the construction of the new sewer, or the diversion of the water from its old course; the damage was done by water which had been accustomed to flow there, and could not get into the sewer because it was already filled. In the present case it is contended, on behalf of the plaintiff, that without regard to the capacity of the new sewer running south on Nicolls street, if the water way running west on Spring street had not been filled up at its intersection with Nicolls street, no damage would have been done to the plaintiff's property.

The liability of the city is denied because (1) it had a right to adopt and construct a system of drainage for the city, and the inadequacy of the sewer on Nicolls street to take all the water from Spring street was an error of judgment; and (2) the old water way was filled up by abutting lot owners and not by the city; and also that the flooding of plaintiff's property on August 23, 1891, was due to an extraordinary fall of rain.

It must be conceded that the power of a municipal corporation to construct sewers is discretionary and in its nature judicial, and that no civil liability is incurred for failure to perform it; nor for errors of judgment in its exercise, such as selecting plans, locations, etc., although the sewers constructed pursuant thereto prove inadequate. But the work of construction in accordance with adopted plans is purely ministerial; it must, therefore, like all ministerial duties, be performed in a skillful and careful manner; and the municipality is liable for injuries caused by its negligent performance: 24 Am. & Eng. Ency. of Law, 946, where numerous authorities are cited.

While a city has absolute power over its streets, its control of them must be exercised with a due regard for the rights of abutting property owners. If, as alleged by the plaintiff here, water which formerly flowed north of her property along Spring

street, in a natural channel sufficient to carry it off, was diverted by the city authorities, and thereby overflowed her lot, the city would be liable for damages resulting from such diversion, and her right to recover would not be affected by the circumstance that the Nicolls street sewer, inadequate when constructed, might prove adequate upon the completion, at a future day, of a general sewerage system. In regulating the flow of surface water on the streets, municipalities have no right to cast it upon adjacent property: Borough of West Bellevue v. Huddleston, 23 W. N. 240; Elliott v. Oil City, 129 Pa. 570; Torrey v. Scranton, 133 Pa. 173. And that water thus diverted must first pass over the intervening land of others will not affect the question of liability: Wier v. Plymouth Borough, 148 Pa. 566.

Of course the ground of the defendant's liability is negligence; want of care in the discharge of its ministerial duties, through which the property of others is injured. If in this case there was no negligence on the part of the city authorities, in obstructing or diverting from its natural channel the water that caused the injury; or if there was no such channel; or if the water which flooded the plaintiff's house was the ordinary surface water, not cast there by any wrongful act of the city; or if it was from an extraordinary flood; or if it was driven there because of the inadequacy of the sewer constructed by the city; or by reason of the natural passage way being filled up or blocked by any person other than the city authorities; or if the plaintiff by any act of hers contributed to the cause of the injuries; there would be no liability on the part of the defendant.

The witness S. S. Hoff having testified in chief that by filling up on Spring street, at its intersection with Nicolls, the ditch was cut off and any excess of water not entering the sewer, would flow down Nicolls street, it was error to exclude, on cross-examination, the question made the subject of the seventh assignment. The defendant had a right to show by the witness, if it could, that notwithstanding that filling, the water coming down Spring street would be discharged through the water course. This assignment is sustained.

The question upon which the sixth assignment is based assumed as facts matters not touched upon by the witness in his examination in chief; it was rightly excluded as not proper on cross-examination.

The assignments of error from the ninth to the fifteenth inclusive, and from the seventeenth to the nineteenth inclusive, relate to the question of damages, and may be considered together. Several witnesses were permitted to state what in their opinion was the market value of the property before and after the several inundations from 1891 until suit brought; and the difference was held the proper measure of damages to the real estate. In this we think there was error. None of the plaintiff's real estate was taken for any public use by the defendant. The property was not wholly destroyed, or irreparably injured. It appears that the plaintiff and her family continued to reside in the house, notwithstanding the floods, and, with the exception of the cellar, used it as before the diversion of the water. If, therefore, the defendant is liable at all, it is for such injuries only as were done to the property; and the measure of compensation would be the cost of repairing the damages and thus restoring the property to its former condition, unless such cost would equal or exceed the value of the building, in which case the value of the building would be the measure of the plaintiff's damages: Lentz v. Carnegie, 145 Pa. 612; Eschleman v. Township, 152 Pa. 68. These assignments are sustained.

A physician called on behalf of the plaintiff testified that the house was in a bad sanitary condition, detrimental to health, and that it would breed disease. But he did not say that during the four years referred to any disease or sickness was caused by its alleged unsanitary condition. On the other hand it appears from the plaintiff's own testimony that she and her family continued to reside in the house, and were obliged to vacate the premises only for a short time in 1891, and then by reason of the overflow. When asked by the defendant's counsel as to the sanitary condition of the house and its effect on the health of herself and family, her attorney's objection to the question was sustained. It is quite reasonable to presume that her counsel would not have objected to this question if she had been able to show that any member of her household had been made ill or was at all affected by the unhealthful condition of the house. We thus have the fact refuting the theory. It was error to admit this testimony of the physician, but having been admitted, it was unfair to the defendant to exclude the question to the plaintiff on the same subject. It

was not alleged in the declaration that the house was made unsanitary or unhealthful as a place of abode, or that the plaintiff or any member of her family was made ill by reason of the flood or of the deposits in the dwelling, nor that any loss or injury was sustained by the plaintiff or her family because of its unhealthful condition. The matter was not material and formed no part of the issue raised by the pleadings. It was, therefore, erroneous to admit testimony concerning it. The sixteenth assignment is sustained.

The offers of testimony set out in the twentieth and twenty-first assignments were pertinent to the issue and material, and the testimony should have been admitted.

The plaintiff claimed damages for alleged permanent injuries to both the real and personal property, and gave evidence in support of her claim. If the injuries were of a permanent nature their presence and character would to some extent at least be visible at the time of the trial, and their lasting effect could be estimated at that time with some degree of certainty. The testimony of the witness Beard was admissible to meet the allegations of the plaintiff as to permanent injury to the property, to describe its general condition at that time, and to show how it was affected by the floods, as distinguished from wear by use during the preceding four years. Its effect was for the jury.

For the reasons given the judgment is reversed and a venire facias de novo is awarded.