# Kester, Appellant, *v.* Main Township.

*Negligence—Townships—Diversion of waters—Damages.*

In an action against a township to recover damages for a mill property resulting from the diversion of water in the repair of a public road, the trial judge properly states the measure of damages when he charges the jury as follows: "If you find that the mill property is permanently injured you should give such damages as would put it back into its former condition, unless it would take more to put it in that condition than it was worth, and then of course you would not allow more than it was worth."

Argued March 2, 1914. Appeal, No. 24, March T., 1914, by plaintiff, from judgment of C. P. Columbia Co., Sept. T., 1911, No. 257, on verdict for defendant in case of Jeremiah Kester v. Main Township. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON and KEPHART, JJ. Affirmed.

Trespass to recover damages for injuries to a mill property. Before JOHNSON, J., specially presiding.

At the trial after the jury had been charged and retired

they returned, and the foreman made the following statement:

By the foreman of the jury: Your honor, we are agreed to disagree, and therefore we would ask for instructions in regard to a few matters, which we seem impossible to agree about. In case this jury should agree to give a verdict in favor of the plaintiff for a certain amount of damages, if we will award him damages for an injury, we consider that a permanent injury, could he come back to the township in the future for the same damages? Then again, if we have any reason to believe that this case was brought perhaps through prejudice, would we have a right to think so, perhaps ill feeling between the parties concerned?

The Court: Gentlemen of the jury, if you were, for example, to find that the mill property was permanently injured the rule of law would be that you would award such damage, such amount of damage, as it would take to put that in its original condition. That is to say, for example, suppose that the mill property was made damp and the timbers rotted through this flooding, now you would figure out what it would cost to put in new timbers to replace those timbers and put the mill property back in that condition again and [if a suit was brought again for damages the court would have to instruct the jury just as we have instructed you and they would say—Gentlemen, if this was a permanent injury, then damages were allowed in the other suit and the plaintiff could not recover twice for the same damages. The next jury would have to determine that, and they would necessarily have to go into this suit, into the evidence and into the whole case to find out whether the same question had been settled before. So that if you find that the mill property is permanently injured you should give such damages as would put it back into its former condition, unless it would take more to put it in that condition than it was worth, and then of course you would not allow more than it was worth. In other

words, if it was worth $2,000, and takes $3,000 to put it back to its former condition, then you would give $2,000, not the $3,000. I think I understand your question whether they could recover twice for the same damage. I would say no, because this suit would be brought up and it would be left to the next jury to determine from all the facts what the nature of the recovery was before.] [1]

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was above instruction, quoting it.

*Rush Trescott,* with him *C. W. Miller,* for appellant.

*Clyde Chas. Yetter,* with him *W. H. Rhawn,* for appellee.

OPINION BY ORLADY, J., July 15, 1914:

The plaintiff claimed that the supervisors of the defendant township so negligently and carelessly changed the natural course of a stream of water and repaired a public highway crossing his lands, near to his dwelling house and gristmill, that the natural flow of water was interfered with, and diverted into his buildings, as to cause him damage and injury in the enjoyment of his property and seriously affect its market value. The defense was that the repairs to the road were necessary, and were made in a careful and proper manner, and further, that all injury to the plaintiff's property was due to a defective construction and arrangement of his buildings and drains, which caused the natural seepage of water through the ground into the cellars of his mill and other buildings.

Before any testimony was offered the jury viewed and inspected the premises, with one counsel of each side acting as a shower, and after an exhaustive trial a verdict was returned for the defendant.

On the trial the plaintiff adduced proof tending to

show that the injuries were permanent in character, and in regard to this the issue was clearly defined in the examination of his witnesses, and to relieve it of doubt the court interrogated counsel when the plaintiff's miller was on the stand, as follows: "Your contention is that this is a permanent injury and you are contending for the rule that the measure of damages is the difference between the value of the property before the filling up and the value after the filling," to which counsel replied, "Yes." This theory was adopted by the court and the jury instructed, viz.: "The question here is, was there a careless construction of that road, which caused more water to flow upon this property than before the construction?" The disputed facts were submitted to the jury in a lucid and fair charge. The measure of damages, when an injury to a building is of a permanent character is the cost of restoring the property to its former condition, together with compensation for the loss of its use: Helbling v. Allegheny Cemetery Co., 201 Pa. 171. And as stated in Gift v. Reading, 3 Pa. Super. Ct. 359, "When property is injured by negligent construction of a sewer by reason of the diversion of water caused thereby, the measure of compensation would be the cost of repairing the damages and thus restoring the property to its former condition, unless such cost would equal or exceed the value of the building, in which case the value of the building would be the measure of the plaintiff's damages."

The defense in this case went to the primary and actual cause of the alleged damage, as well as to the character of the changes made in the public highway, under the law governing such public work, as announced in Edwards v. Williamsport, 36 Pa. Super. Ct. 43, and Metzgar v. Lycoming Township, 39 Pa. Super. Ct. 602.

The case was carefully tried and the verdict is sustained by sufficient testimony to justify the court in refusing a new trial.

The judgment is affirmed.